John S. Hanna et al. v. Drovers National Bank.

1.  SLANDER—*Of Credit—Refusal to Pay a Check.*—Where a check is drawn by a person in trade in favor of and delivered to a third person who presents the same to the bank upon which it is drawn for payment and is refused payment for want of funds, when there are ample funds

in the bank belonging to the drawer of the check and applicable to its payment, such refusal is wrongful, and entitles the drawer of the check to an action for wrongfully slandering his credit in his business.

2. BANKS AND BANKING—*When a Wrongful Refusal to Pay a Check is Not a Slander of the Drawer's Credit.*—A refusal by a bank to pay a depositor upon his own demand, can not be said to constitute a publishing of the discredit of the depositor so as to entitle him to an action for slandering his credit. The wrongful act, to sustain an action of this kind, will not exist in the mere fact of the refusal to pay the money to the depositor over the counter of the bank; such action would be a private matter between the bank and the depositor, to which no publicity or injury to the reputation would necessarily attach.

**Trespass on the Case**, for slander of credit. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed January 15, 1901.

LLOYD G. KIRKLAND and J. S. HUEY, attorneys for appellants.

GEORGE P. MERRICK, attorney for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

The appellants sued the appellee in trespass on the case, for what may be called a slandering of their credit as traders. By direction of the trial judge the jury found a verdict for the defendant, and from a judgment entered on the verdict, this appeal comes.

The amended declaration consists of four counts. In each of the counts it is set out that defendant was on June 10, 1890, engaged in the general banking business in Chicago, and that plaintiffs, comprising the firm of Hanna, Son & Co., were, on that date, and prior thereto, depositors in defendant bank, and on that date had on deposit in said bank an amount ample to meet all checks theretofore drawn by them on said bank; that plaintiffs were on that date and prior thereto, engaged in the live stock commission business at Union Stock Yards, Chicago, under said firm name of Hanna, Son & Co., and received live stock by the carloads, to sell on commission, and were as such firm, of

good name, credit, reputation and business standing; and sets out in three several counts, that plaintiffs drew three checks on said bank, one on June 7, 1890, in favor of Hess Bros. for $3,300, one on same date in favor of Rittenhouse & Embree for $32.32, and another on June 9, 1890, in favor of Philo A. Otis for $40, which checks were duly presented to defendant by said parties, respectively, for payment on or about said dates, and payment refused in each case, although plaintiffs' balance on deposit was then ample to pay said checks. The fourth count is stated later on.

Defendant filed the general issue and three special pleas of former adjudication. The substance of these pleas was, that in a certain cause in the Circuit Court of Cook County wherein one Clemmer and others, being consignors of the stock to Hanna, Son & Co., mentioned in the amended declaration in this cause, were complainants, and plaintiffs and defendant in this action, were defendants, a final decree was entered July 16, 1894, finding that the moneys on deposit in defendant's bank to the credit of Hanna, Son & Co. on June 10, 1890, were the proceeds of sales of stock shipped to Hanna, Son & Co. by said consignors, for sale, and in equity belonged to said consignors, and that the bank had knowledge of that fact, and decreeing said bank to pay said moneys to said consignors, and that the application of said moneys to the payment of a note held by the bank, of John S. Hanna, William P. Hanna and S. W. Sinclair, was unlawful and unauthorized. Subsequently a demurrer to the special pleas was sustained, and, by leave of court, the same matters set out in the pleas of former adjudication were repeated in a notice of defense under the statute, and the cause went to trial under the plea of the general issue and such notice of defense.

The decree of the Circuit Court, set out in the notice of defense, was affirmed by the Supreme Court. (Clemmer et al. v. Drovers National Bank, 157 Ill. 206.) The effect of that decree was to establish that all the moneys in the bank to the credit of Hanna, Son & Co., were the proceeds of the sale of live stock shipped to Hanna, Son & Co. as commis-

sion merchants, by the complainants and cross-complainants, in the Circuit Court suit, (called country shippers, for brevity's sake,) and were trust moneys, and belonged to the country shippers; that the bank knew that said moneys were the proceeds of the sales of stock sold by Hanna, Son & Co., on commission for the shippers thereof; that Hanna, Son & Co. were and had been for some time prior to said June 10, 1890, insolvent, and the bank had knowledge thereof; that Hess Bros., in whose favor the check for $3,300 (mentioned in the first count) was drawn, had no valid claim against the bank on account of said check, and that the country shippers were entitled to receive from the bank the whole amount of said moneys so deposited in the name of Hanna, Son & Co. And the bank was decreed to pay said moneys to the country shippers, and Hess Bros. were perpetually enjoined from proceeding against the bank on said check. (The controversy, if there was any, as to the small checks, mentioned in the second and third counts, seems to have in some way dropped out, or been eliminated.)

It would seem plain enough from an examination of the decree of the Circuit Court and the opinion of the Supreme Court affirming the same, that as to the fund in bank there has been a complete adjudication, and that no wrong was done by the bank to Hanna, Son & Co. by refusing to pay the same to the check-holders. Hanna v. Read, 102 Ill. 596.

But it is contended that there was a liability by the bank to the plaintiffs under the fourth count. That count alleged generally, as in the second and third counts, the business of the plaintiffs and of the bank, and their relation to each other as depositors and bankers, and that plaintiffs had a free and unincumbered balance to their credit on their account with the bank, and then proceeded to state (in language quoted from appellants' abstract):

" On June 10, 1890, plaintiffs, as such commission merchants, were indebted to certain consignors of stock, for consignment of stock shipped to plaintiffs to be sold on commission and proceeds to be turned over to said consignors, and plaintiffs' deposit account at said bank included funds derived from such commission sales and held in trust

Hanna v. Drovers National Bank.

by plaintiffs for said consignors, all of which facts were known to defendant, and plaintiffs' firm then had on its said account with said bank a free and unincumbered balance sufficient to pay said indebtedness; and said firm on said date demanded of defendant 'the balance to plaintiffs' credit on its said account to pay said indebtedness to said consignors, and it was defendant's duty then to pay said balance on said firm's demand, to preserve plaintiffs' credit; yet defendant, well knowing the premises and contriving and maliciously intending to injure plaintiffs in their good name, credit, etc., in their said business, and to cause them to be believed and reputed to be unworthy of credit, not regarding its said duty, did willfully and maliciously refuse to pay said balance on demand, to the discredit and damage of plaintiffs."  .

The wrongful refusal so alleged is not to pay a check drawn by the plaintiffs in favor of a third person, but merely a refusal to pay said balance on a verbal demand therefor made by the plaintiffs.  If it be, the written notice dated June 10, 1890, given by the bank to plaintiffs, that the bank had exhausted the balance by applying it to its own use, obviated the formality of drawing and presenting a check for the funds, still a refusal to pay a depositor himself upon his own demand, can not be said to constitute a publishing of the discredit of the depositor so as to entitle him to an action for slandering his credit.  The wrongful act to sustain an action of this kind would not exist in the mere fact of a refusal to pay money demanded by the depositor over the counter of the bank.  That would be a private matter between the two, to which no publicity or injury to reputation need attach.  If, however, a check were drawn by a person in trade, in favor of and delivered to a third person, who should present the same for payment and then be refused for want of funds, there being money in the bank belonging to the drawer of the check and applicable to its payment, then a refusal to pay would be wrongful, and entitle the drawer to an action for wrongfully slandering his credit in his business.

The case of Schaffner v. Ehrman, 139 Ill. 109, states the law upon that subject in substantially that way, and seemingly limits the right of action to one who has drawn

a check. Such was the construction put upon the effect of that decision by the learned trial judge, and we think the conclusion is a just one. There ought not to be a recovery for a wrong where no wrong was done. Aside from the fact that the fourth count fails to state a case of a wrong done, it appears from the Clemmer case, *supra*, that appellants were not entitled to the money, or any part of it. We think the case was correctly decided by the Superior Court judge, and the judgment will be affirmed.